UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
BRIGID PIERCE,

                Plaintiff,

          - against -

NEW YORK CITY POLICE DEPARTMENT
OFFICER JOSEPH RYDER, *et al.*,

                Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-3482 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Brigid Pierce ("Plaintiff") brings this action against the City of New York (the "City"); New York City Police Department ("NYPD") Officers Joseph Ryder, Danielle Moses, Michael Said, and Steven Kamalic, in their individual capacities (collectively, the "Individual Defendants"), as well as several unidentified NYPD police officers, after being injured and arrested at a protest against police brutality in the aftermath of George Floyd's killing. Plaintiff alleges violations of 42 U.S.C. § 1983 ("Section 1983") for excessive force, false arrest, malicious prosecution, and First Amendment retaliation. (Am. Compl., Dkt. 26 ("Am. Compl.") ¶¶ 167–202.) Plaintiff also alleges claims under New York State law for common law negligence/denial of medical care, assault, battery, false arrest, and malicious prosecution. (*Id.* ¶¶ 203–37.)

      Before the Court are two motions. First, Plaintiff moves for sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1), seeking to preclude Defendants from relying on video evidence they produced after discovery had already closed and to preclude NYPD Officer Evgeny Kramar—whose body-worn camera footage was belatedly produced by Defendants—from testifying at trial.

(Dkt. 77-1 at ECF 2.[1]) Second, Defendants seek summary judgment on Plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation.[2] (Dkt. 75 at ECF 1.) For the reasons stated below, Plaintiff's sanctions motion is granted and Defendants' motion for partial summary judgment is denied.

## BACKGROUND

### I.   Relevant Facts[3]

On June 3, 2020, Plaintiff Brigid Pierce participated in a protest attended by thousands of people at Cadman Plaza in Brooklyn, New York, following the killing of George Floyd by a Minneapolis police officer. (Defs.' 56.1 Statement, Dkt. 75-16 ("Defs.' 56.1") ¶¶ 3, 5, 10.) At the time, a daily city-wide curfew was in effect between 8:00 p.m. and 5:00 a.m. (*Id.* ¶ 4.) The Executive Order establishing the curfew stated, *inter alia*, that "[f]ailure to comply with this Order shall result in orders to disperse, and any person who knowingly violates the provisions in this Order shall be guilty of a Class B misdemeanor." (*Id.*) Plaintiff arrived at the June 3, 2020, protest

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] Defendants are not seeking summary judgment as to Plaintiff's Section 1983 excessive force claim or her common law claims of negligence/denial of medical care, assault, and battery. Hence their motion is one for partial summary judgment.

[3] Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a party's Local Rule 56.1 statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to an underlying document. However, where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in in the other's 56.1 statement, the Court may deem any such facts undisputed. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012).

between 8:00 p.m. and 8:40 p.m. (*Id.* ¶ 10.) Shortly before 9:00 p.m., NYPD officers started arresting protestors. (*Id.* ¶ 15). Plaintiff was arrested at around 8:55 p.m. (*Id.* ¶ 16.)

The parties dispute the events leading up to Plaintiff's arrest. NYPD Captain Tarik Sheppard testified at his deposition that he ordered NYPD officers to verbally inform protestors that they should disperse because of the curfew prior to making arrests. (*Id.* ¶ 11; Dep. Tr. of Tarik Sheppard, Dkt. 75-11 at 92:21–93:4.) Plaintiff, however, testified during her deposition that she did not receive an order to disperse before her arrest. (Dep. Tr. of Brigid Pierce, Dkt. 76-3 at 57:7–61:9.) According to Plaintiff, after noticing an officer to her right begin to push into a protestor with his shield, she turned her camera towards them, i.e., towards the officer and the other protester, and told them that she was filming. (*Id.* at 57:4–8.) Defendant Ryder—the NYPD officer standing to the "north" of Plaintiff—then started pushing Plaintiff with his shield, "grabbed [her,] . . . picked [her] up[,] . . . flung [her] past his body and threw [her] beside him." (*Id.* at 57:16–58:1, 58:17–59:2.) Plaintiff further testified that she landed on the ground, after which "about five officers descended on [her]. They grabbed [her] by all of [her] limbs, . . . exposed one of [her] breasts, . . . slammed [her] head, repeatedly, into the ground, [and] twisted [her] skull on the pavement and scraped it along the ground." (*Id.* at 59:18–60:2.) During discovery, Plaintiff produced her cell phone video, along with video taken by two bystanders, showing the moments leading up to Plaintiff's arrest. (Dkts. 76-4, 76-5, 76-6.) Defendant Ryder testified that, while he did not personally order Plaintiff to disperse, he observed other NYPD officers issuing orders of dispersals to the crowd. (Dep. Tr. of Joseph Ryder, Dkt. 75-6 at 83:10–17.) Officer Ryder further testified that he believed Plaintiff had received a dispersal order before he arrested her. (*Id.* at 87:6–13.)

After her arrest, Plaintiff spent six to seven hours in police custody until her release. (Pl.'s 56.1 Counterstatement, Dkt. 76-1 ("Pl.'s 56.1") ¶ 20.) Shortly before being released, Plaintiff was issued a summons for violating the city-wide curfew. (Defs.' 56.1 ¶¶ 19, 20.) Plaintiff's summons was dismissed on September 9, 2020, before her first court appearance was scheduled to occur on September 30, 2020. (*Id.* ¶ 22; Pl.'s 56.1 ¶ 22.)

## II.  Procedural History

Plaintiff initiated the present action on June 21, 2021. (*See* Compl., Dkt. 1.) On October 4, 2021, Plaintiff filed the operative Amended Complaint. (Am. Compl., Dkt. 26.) Defendants Moses, Ryder, Said, and the City answered the Amended Complaint on October 18, 2021. (Dkt. 33.) Defendant Kamalic filed a separate answer on November 12, 2021. (Dkt. 36.)

Following numerous discovery disputes, (*see, e.g.*, Dkts. 48–50; 5/27/2022 Dkt. Order), and attempts at settlement, (*see, e.g.*, Dkts. 57, 64; 8/28/2023 & 10/3/2023 Min. Entries), discovery was completed on October 3, 2023, (10/3/2023 Min. Entry). On November 2, 2023, Defendants filed a letter requesting a pre-motion conference in anticipation of a motion for partial summary judgment. (Dkt. 70.) Plaintiff responded on November 9, 2023. (Dkt. 71.) The Court granted the request for a pre-motion conference, which was held on December 21, 2023. (12/21/2023 Min. Entry.) The Court instructed the parties that, in the event Defendants were to move for summary judgment, the Court would decide the motion on an expedited basis by relying on the parties' 56.1 statements and evidentiary submissions, without accompanying legal briefing. (*See id.*)

Defendants subsequently moved for partial summary judgment, filing their 56.1 statements and accompanying exhibits on February 16, 2024. (Dkt. 75.) Plaintiff filed her counterstatement and accompanying exhibits on March 15, 2024, along with a motion for sanctions, seeking to exclude video evidence that Defendants produced 19 months after discovery had closed. (Dkts. 76,

77.) Defendants' partial summary judgment was fully briefed on March 22, 2024. (Dkt. 79.) Plaintiffs' sanctions motion was fully briefed on April 2, 2024. (Dkts. 80, 82.)

## DISCUSSION

The Court first evaluates Plaintiff's motion for sanctions before turning to Defendants' motion for partial summary judgment.

**I.  Plaintiff's Sanctions Motion**

Plaintiff moves, pursuant to Rule 37(c)(1), to "preclude Defendants from relying on Exhibit G to support their motion for partial summary judgment and [to] preclude Officer Evgeny Kramar, whose bodyworn camera footage Defendants claim this is, from testifying at trial." (Pl.'s Sanctions Mem., Dkt. 77-1 at 1.) Specifically, Plaintiff states that Defendants first produced the video labelled Exhibit G to Plaintiff over 19 months after fact discovery had closed in this case. (*Id.*) The video in question is footage allegedly taken by NYPD Officer Evgeny Kramar's body-worn camera that "shows plaintiff receiving a dispersal order minutes before her arrest for violating the curfew." (Defs.' Sanctions Opp'n, Dkt. 80 at 6.) Importantly, Officer Kramar was not named in Defendants' initial disclosures and Plaintiff has not had an opportunity to seek discovery related to this video evidence. (Pl.'s Sanctions Mem., Dkt. 77-1 at 1.)

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless." *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (citing *Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)). In determining whether to exclude evidence under this standard, a district court considers: (i) the party's

5

explanation for its failure to disclose, (ii) the importance of the evidence, (iii) the prejudice suffered by the opposing party, and (iv) the possibility of a continuance. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (citing *Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir. 2006)).

Here, Defendants have not met the burden of showing that the belated production of Officer Kramar's body-worn video footage was either substantially justified or harmless. First, Defendants offer no justification for their late disclosure of the video evidence, stating simply that it was an "oversight" and that the discussion at the pre-motion conference "prompted defense counsel to review the evidence in their possession," which in turn "led defendants to discover that they had not produced the [Kramar body-worn camera] Video File." (Defs.' Sanctions Opp'n, Dkt. 80 at 3.) Whether Defendants' delay was unintentional is irrelevant. *See Design Strategy, Inc.*, 469 F.3d at 296 ("Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) ("[D]iscovery sanctions . . . may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence.").

Though the video evidence is arguably material[4] to the question of whether Plaintiff received a dispersal order before her arrest, allowing the evidence in at this stage certainly prejudices Plaintiff. Officer Kramar was not named in Defendants' initial disclosures and Plaintiff has not had the chance to depose him. (*See* Pl.'s Sanctions Mem., Dkt. 77-1 at 1, 3–4.) As for the

---

[4] Having reviewed the body-worn camera footage, the Court notes that the footage does not provide direct evidence that Plaintiff received or heard any order to disperse before her arrest. At time stamp 4:14, the crowd can be heard shouting "Fuck your curfew" but Plaintiff is not seen in the crowd. At time stamp 15:00, Plaintiff is seen talking to a "colleague" of Officer Kramar's, who tells her that she is not supposed to be there. In response, Plaintiff says that she is hard of hearing, that she cannot hear him, and then walks away. The incidents leading up to Plaintiff's arrest take place a few minutes later.

defense case, Defendant Ryder—who had the initial altercation with Plaintiff—will still be able to testify at trial about the events leading up to Plaintiff's arrest, as will the other named NYPD Defendants, e.g., Officers Moses, Said, and Kamalic. (*See* Defs.' Rule 26(a) Disclosures, Dkt. 77-5 at ECF 2.) Lastly, though no trial dates have yet been set in this case, this action has been ongoing for over four years, and discovery started as early as October 2021. (*See* Dkt. 37 at 1.) Defendants thus had ample time to identify and produce the video evidence in question, and the Court sees no reason to allow Defendants to prolong the adjudication of Plaintiff's claims due to their belated disclosure, even if only to reopen discovery to depose Officer Kramar.

"The imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion." *Mavl Cap., Inc. v. Marine Transp. Logistics, Inc.*, No. 13-CV-7110 (PKC) (RLM), 2018 WL 1474175, at *10 (E.D.N.Y. Mar. 26, 2018) (citing *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999)), *aff'd*, 771 F. App'x 56 (2d Cir. 2019) (summary order)). The Court finds that Defendants' failure to disclose Officer Kramar's body-worn camera footage was neither substantially justified nor harmless, and grants Plaintiff's motion to preclude Exhibit G from being considered in resolving Defendants' summary judgment motion. The Court further grants Plaintiff's motion to preclude Officer Evgeny Kramar from testifying at trial.

## II.     Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment as to the following Section 1983 causes of action: (1) Fourth and Fourteenth Amendments False Arrest against Defendants Ryder and John Does #1–4; (2) Fourth and Fourteenth Amendments Malicious Prosecution against Defendant Moses; and (3) First Amendment Retaliation against Defendant Ryder. Defendants also move for summary judgment as to Plaintiff's common law malicious prosecution claims against Defendants Moses and the City of New York, and her common law false arrest/false imprisonment claim

7

against Defendants Ryder, John Does #1–4, and the City of New York. (*See* Am. Compl. ¶¶ 167–237; Defs.' Ltr. Supp. Summ. J., Dkt. 75 at ECF 1 (explaining that Defendants seek summary judgment on "Plaintiff's claims for false arrest, malicious prosecution, and First Amendment retaliation").)

### A. Summary Judgment Standard

To obtain summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact," and, thus, that the party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) (citing, *inter alia*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

"The moving party bears the burden of showing that he or she is entitled to summary judgment." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 267 (E.D.N.Y. 2008). Where the defendant is the moving party, there is "no express or implied requirement" that the defendant "negat[e] the [plaintiff's] claim" with evidence of its own, as long as it "point[s] out to the district court . . . that there is an absence of evidence to support the [plaintiff's] case." *Celotex Corp.*, 477 U.S. at 323, 325 (emphasis omitted). Once a defendant has met this burden, the plaintiff must "do[] more than simply rely on the contrary allegation[s] in her complaint," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970), and "go beyond the pleadings" to "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (explaining that a non-moving

party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to defeat summary judgment).

### B.  Defendants Are Not Entitled to Summary Judgment

Here, Defendants first argue that they are entitled to summary judgment on the false arrest, malicious prosecution, and First Amendment claims because there was probable cause to arrest Plaintiff for violating the curfew under the Executive Order. (Defs.' Ltr. Supp. Summ. J., Dkt. 75 at ECF 1.)[5] Specifically, Defendants argue that "the law does not require that dispersal orders be given prior to an arrest for a curfew violation, but that regardless, the record nonetheless shows that Plaintiff was ordered to disperse." (*Id.*) The Court disagrees on both counts.

First, a plain reading of the Executive Order indicates that a dispersal order had to be given (and disobeyed) before a person could be arrested for violating the curfew. The Executive Order stated, *inter alia*, that "[f]ailure to comply with this Order *shall result* in orders to disperse, and any person who *knowingly* violates the provisions in this Order shall be guilty of a Class B misdemeanor." (*See* Emergency Executive Order No. 119, Dkt. 75-5 (emphasis added).) Thus, whether Defendants had probable cause to arrest Plaintiff for violating the curfew depends on whether there was a dispersal order communicated to her. *See Dinler v. City of New York*, No. 04-CV-7921 (RJS) (JCF), 2012 WL 4513352, at *10 (S.D.N.Y. Sept. 30, 2012) (finding that there

---

[5] A showing of probable cause for Plaintiff's arrest would be a complete defense to all of her Section 1983 claims. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *Bullard v. City of New York*, 240 F. Supp. 2d 292, 297 (S.D.N.Y. 2003) ("[T]he existence of probable cause to commence a proceeding is also a complete bar to a claim of malicious prosecution."); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will . . . defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her.").

9

was no probable cause to arrest protesters where defendant's dispersal order was not sufficiently amplified so as to be heard by all and protestors had no opportunity to comply with the order); *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 408 (S.D.N.Y. 2021) ("[F]ailing to give . . . [a dispersal] order, especially where, as here, one is explicitly required, may be relevant evidence in connection with a claim of false arrest.")

Second, there exists a genuine factual dispute as to whether Plaintiff received such a dispersal order, so as to support a finding of probable cause for her arrest. Plaintiff has submitted three videos—one taken on her own cell phone and two taken by bystanders—capturing the moments leading up to her arrest. (*See* Dkts. 76-4, 76-5, 76-6.) No dispersal orders are audible in any of the videos. (*Id.*) Plaintiff further testified that she did not hear any dispersal order. (Dep. Tr. of Brigid Pierce, Dkt. 76-3 at 57:7–61:9.) NYPD Captain Sheppard, on the other hand, testified that he ordered NYPD officers to verbally inform protestors before making any arrests that they should disperse because of the curfew. (Dep. Tr. of Tarik Sheppard, Dkt. 75-11 at 92:21–93:4.) Defendant Ryder testified that he observed other NYPD officers issuing orders of dispersals to the crowd. (Dep. Tr. of Joseph Ryder, Dkt. 75-6 at 83:10–17.) These conflicting accounts are enough to create a genuine dispute of material fact that cannot be determined as a matter of law on a motion for summary judgment. *See also Weyant*, 101 F.3d at 852 (explaining that the "question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute" (citations omitted)).

For the same reasons, Defendants' defense based on qualified immunity fails at this stage. Defendants argue that "the [I]ndividual Defendants are entitled to qualified immunity because, Officer Ryder who arrested Plaintiff, reasonably believed [Plaintiff] had been ordered to disperse."

10

(Defs.' Ltr. Supp. Summ. J., Dkt. 75 at ECF 1.)  Defendant Ryder testified to the same.  (Dep. Tr. of Joseph Ryder, Dkt. 75-6 at 87:6–13.)  To succeed on a defense of qualified immunity on summary judgment, Defendants must show that "it was 'objectively reasonable' for [the Individual Defendants] at the time of the challenged action to believe [their] acts were lawful."  *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir. 2007) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "[T]he matter of whether a defendant official's conduct was objectively reasonable, *i.e.,* whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact."  *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir. 2004).

Given the existence of genuine factual disputes as to whether a dispersal order was communicated to Plaintiff or even the crowd of protesters, it is the jury's duty to resolve those disputes.  *See Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (holding that summary judgment on qualified immunity grounds is not appropriate where "the parties' versions of the facts differ markedly" and "there are facts in dispute that are material to a determination of reasonableness" (citation omitted)); *see also Harewood v. City of New York*, No. 09-CV-2874 (FB) (RML), 2012 WL 12884356, at *6 (E.D.N.Y. Feb. 10, 2012) ("Because there is a triable question regarding whether there was probable cause to arrest and prosecute [the plaintiff], [the defendant] is not entitled to qualified immunity.").  Accordingly, the Court denies Defendants' partial motion for summary judgment based on qualified immunity.

Finally, the Court is also persuaded that where, as here, other claims, such as Plaintiff's assault, battery, negligence/denial of medical care, and excessive force claims, are going forward based on the same evidence as is being relied upon for the challenged claims, the better course is not to dismiss the challenged claims.  *See Thibodeaux v. Travco Ins. Co.*, No. 13-CV-5599 (ERK)

11

(VVP), 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted."); *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 241–42 (E.D.N.Y. 2015) (denying motion for summary judgment on challenged claims due in part to the existence of other claims that were going forward based on the same evidence).

## CONCLUSION

For the reasons stated above, the Court grants Plaintiff's motion to preclude Defendants from relying on video evidence submitted as Exhibit G in support of their summary judgment motion. The Court also grants Plaintiff's motion to preclude NYPD Officer Evgeny Kramar from testifying at trial. Lastly, the Court denies Defendants' motion for partial summary judgment in its entirety. All of Plaintiff's claims will proceed to trial. The parties shall submit a Joint Pretrial Order within thirty (30) days of this Memorandum and Order. A pretrial conference will be scheduled thereafter.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 12, 2025
Brooklyn, New York