UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BRIGID PIERCE,

                      Plaintiff,

      -against-

NEW YORK CITY POLICE DEPARTMENT
OFFICER JOSEPH RYDER, et al.

                 Defendants.

Index No. 21 Civ. 3482 (PKC) (JRC)


# OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTIONS *IN LIMINE*


Emery Celli Brinckerhoff Abady Ward & Maazel LLP
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000

### TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ....................................................................................iii-v

PRELIMINARY STATEMENT ....................................................................................1

I.    THE COURT SHOULD EXCLUDE DR. ROBERT APRIL'S UNDISCLOSED AND UNFOUNDED OPINIONS ................................................................1

    A.    The Court Should Exclude Dr. April's Undisclosed Speculation that Ms. Pierce's ████████████████████ ....................................................2

        1.    Dr. April's Failure to Disclose this Opinion Requires its Exclusion .....................2

        2.    Dr. April's Undisclosed Opinion Lacks Any Factual or Methodological Basis................................................................................................3

    B.    The Court Should Exclude Dr. April's Baseless Assessment of ████████ ████████████████████, Which Are Outside His Expertise .....................5

        1.    Dr. April Is Not Qualified to Opine About ████████████████ ████████████████ .....................................................5

        2.    Dr. April Fails to Apply Reliable Facts or Methods to His Opinion Concerning the Cause of ████████████████ .........................8

II.    THE COURT SHOULD EXCLUDE DR. JOSEFINA TRANFA-ABBOUD'S NON-EXPERT TESTIMONY AND TESTIMONY OUTSIDE HER EXPERTISE ................................................................9

    A.    Rebuttal Experts Are Subject to the Same Admissibility Standards as All Experts................................................................................10

    B.    Background on Plaintiff's and Defendants' Economic Experts................................10

        1.    Plaintiff's Economist Kristin K. Kucsma ..........................................11

        2.    Defendants' Economist Dr. Josefina Tranfa-Abboud............................12

    C.    Paragraphs 1-13 of Dr. Tranfa-Abboud's Report Are Not Proper Expert Testimony ................................................................13

        1.    Paragraphs 1-4 of Dr. Tranfa-Abboud's Report Are Inadmissible......................13

        2.    Paragraphs 5-10 of Dr. Tranfa-Abboud's Report Are Inadmissible....................16

        3.    Paragraphs 11-13 of Dr. Tranfa-Abboud's Report Are Inadmissible..................18

i

III.    THE COURT SHOULD EXCLUDE EVIDENCE ABOUT EVENTS WITH NO CONNECTION TO MS. PIERCE OR HER ARREST ........................................18

A.    The Court Should Exclude Testimony About the Conduct of Other Protesters at Locations Separate from Ms. Pierce's Arrest .............................................................19

B.    The Court Should Exclude Testimony About Dispersal Orders Given at Times and Locations Where There Is No Evidence Ms. Pierce was Present.......................21

C.    The Court Should Preclude Non-Party NYPD Captain Tarik Sheppard from Testifying...................................................................................................................22

CONCLUSION........................................................................................................................24

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)................................................................. 3

*Capri Sun GmbH v. Am. Bev. Corp.*,
    595 F. Supp. 3d 83 (S.D.N.Y. 2022)..................................................... 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)............................................................... 4, 10, 16

*Estate of Jaquez v. City of New York*,
    104 F. Supp. 3d 414 (S.D.N.Y. 2015)................................................. 5, 6

*Fantasia Distrib., Inc. v. Cool Clouds Distrib., Inc.*,
    693 F. Supp. 3d 335 (E.D.N.Y. 2023) ............................................. 4, 5, 8

*Foley v. United States*,
    294 F. Supp. 3d 83 (W.D.N.Y. 2018) ................................................... 6

*Gonzalez v. City of Schenectady*,
    728 F.3d 149 (2d Cir. 2013).............................................................. 21

*Graham v. Connor*,
    490 U.S. 386 (1989)........................................................................ 20

*Highland Cap. Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005).................................................. 10

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)................................................... 6

*In re Fosamax Prods. Liab. Litig.*,
    924 F. Supp. 2d 477 (S.D.N.Y. 2013)................................................... 3

*In re Fosamax Prods. Liab. Litig.*,
    No. 06 Civ. 7631, 2009 WL 4042769 (S.D.N.Y. Nov. 23, 2009) ..................... 6

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................... 4

*Kozak v. Liberty Maritime Corp.*,
    729 F. Supp. 3d 277 (E.D.N.Y. 2024) ................................................... 3

*LaSalle Bank Nat'l Ass'n v. CIBC Inc.*,
    No. 08 Civ. 8426, 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ....................... 3

*Lennon v. Miller*,
    66 F.3d 416 (2d Cir. 1995)................................................................................ 21

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
    589 F. Supp. 3d 302 (S.D.N.Y. 2022).......................................................... 14, 15

*Lopez v. Gamble et al.*,
    No. 21 Civ. 2492 (E.D.N.Y.) ......................................................................... 23

*Loyd v. United States*,
    No. 08 Civ. 9016, 2011 WL 1327043 (S.D.N.Y 2011) ..................................... 6

*Maryland v. Pringle*,
    540 U.S. 366 (2003)...................................................................................... 20, 21

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)............................................................. 14

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ........................................................... 10, 14, 17

*Tracy v. Freshwater*,
    623 F.3d 90 (2d Cir. 2010)............................................................................... 20

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008)....................................................................... 10, 15

*United States v. Tin Yat Chin*,
    371 F.3d 31 (2d Cir. 2004)................................................................................ 6

**Other Authorities**

Jane Tyler Ward, PhD, *What Is Forensic Psychology?*, American Psychological Association,
    https://www.apa.org/ed/precollege/psn/2013/09/forensic-psychology (last visited Aug. 4,
    2025) ................................................................................................................. 5

████████████████████████████████████████████████████████████ .......... 8

Wright & Miller, 8A Fed. Prac. &. Proc. § 2031.1........................................................ 3

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................ 2

Fed. R. Evid. 401 ......................................................................................................... 19

Fed. R. Evid. 403 ......................................................................................................... 19

Fed. R. Evid. 702 .................................................................................................................. passim

**PRELIMINARY STATEMENT**

Plaintiff respectfully requests that the Court grant three motions *in limine*:

*First*, to preclude Defendants' neurological expert Dr. Robert April from offering two opinions at trial because (a) he failed to disclose one of them in his expert report, and (b) both lack the reliable factual and methodological foundation necessary to be admissible under Federal Rule of Evidence 702.

*Second*, to preclude Defendants' rebuttal economics expert Dr. Josefina Tranfa-Abboud from playing juror and providing lay opinions that analyze and weigh facts in the record without applying any method of economic analysis or explaining how her economics expertise informs her conclusions.

*Third*, to preclude police officer witnesses from testifying about events that lack any connection or relevance to Defendants' assault and arrest of Ms. Pierce, including: (a) testimony that unidentified protesters, at different times and in different locations, yelled and threw objects where there is no evidence that Ms. Pierce was present; (b) testimony that officers gave or heard dispersal orders at different times and different locations where there is no evidence that Ms. Pierce was present; and (c) all testimony from non-party NYPD Captain Tarik Sheppard, who has no knowledge of anything relevant to this case.

## I.   THE COURT SHOULD EXCLUDE DR. ROBERT APRIL'S UNDISCLOSED AND UNFOUNDED OPINIONS

The Court should exclude two opinions given by Defendants' neurological expert Dr. Robert April because they fail to comply with the requirements for expert testimony under the Federal Rules of Evidence and Federal Rules of Civil Procedure.

*First*, Dr. April's opinion that Ms. Pierce's ███████████████████████ ███████████████████ is inadmissible because (a) he failed to disclose this idea, speculation,

1

or opinion in his expert report, instead providing this idea for the first and only time at his deposition; and (b) it is based on wholesale speculation without any factual or methodological support.

*Second*, Dr. April's opinion that Ms. Pierce's  is inadmissible because (a) as a neurologist, he is not qualified to opine about the cause of ▇▇▇▇▇▇▇▇▇▇ and (b) he conducted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

### A. The Court Should Exclude Dr. April's Undisclosed Speculation that Ms. Pierce's ▇▇▇▇▇▇▇▇▇▇

At his deposition, Dr. April opined for the first and only time that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that he speculates could have taken place during "▇▇▇▇▇▇▇▇▇▇▇▇▇." Ex. 1[1] (Dr. April Dep.) at 53:9-54:13. This opinion appears nowhere in Dr. April's expert report—a fact he admitted at his deposition. *Id.* at 54:14-17 ("Q. There is nothing in your expert report about ▇▇▇▇▇▇▇▇▇, is there? A. No."); *see* Ex. 2 (Dr. April Expert Report). His failure to disclose this opinion in his expert report violates the Federal Rules of Civil Procedure and requires its exclusion. In addition, his deposition testimony confirms that this opinion is pure speculation that fails to meet Federal Rule of Evidence 702's reliability requirements.

### 1. Dr. April's Failure to Disclose this Opinion Requires its Exclusion

Federal Rule of Civil Procedure 26 requires expert reports to provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Applying the Rule's clear language, it is black letter law that the "expert's

---

[1] "Ex." refers to the exhibits attached to the Declaration of Max Selver filed in support of this motion.

report operates to limit the scope of the testimony that can be elicited from the expert and opinions that are not disclosed in the expert's report cannot be offered." *Kozak v. Liberty Maritime Corp.*, 729 F. Supp. 3d 277, 294-95 (E.D.N.Y. 2024) (cleaned up); *see, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 494 (S.D.N.Y. 2013) (excluding expert opinion where "expert report did not include the opinion"); *LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08 Civ. 8426, 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012) ("Opinions that are not disclosed in the expert's report cannot be offered.").

As one leading treatise explains:

> One particular problem has arisen when experts seek to offer new information or theories not included in their reports, even assuming those were adequate when initially served. Rule 37(c)(1) calls for exclusion of information that should have been revealed but was not. Courts have frequently excluded proffered expert testimony under this rule, most often in connection with trial . . . .

Wright & Miller, 8A Fed. Prac. &. Proc. § 2031.1 (collecting cases).

Dr. April's conceded failure to disclose this opinion in his expert report violates the Federal Rules of Civil Procedure and requires its exclusion.

## 2. Dr. April's Undisclosed Opinion Lacks Any Factual or Methodological Basis

In addition to Dr. April's failure to disclose this opinion in his report, his deposition testimony confirms that this opinion is pure speculation. It lacks "sufficient facts or data," "reliable principles and methods," and a "reliable application of the principles and methods to the facts of the case" that Federal Rule of Evidence 702 requires to admit expert testimony. *See* Fed. R. Evid. 702(b)-(d).

Under Rule 702, "it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "Expert opinions based on insufficient facts or data, or on unsupported suppositions, [are] not acceptable."

*Fantasia Distrib., Inc. v. Cool Clouds Distrib., Inc.*, 693 F. Supp. 3d 335, 345 (E.D.N.Y. 2023) (alteration in original) (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007)). The Court must also assess "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be properly applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). That is, the Court must "decide not only whether an expert's methodology is reliable for some purposes, but whether it is a reliable way to draw a conclusion regarding the particular matter to which the expert testimony is directly relevant." *Fantasia Distrib.*, 693 F. Supp. 3d at 345 (cleaned up).

Dr. April offered no facts or methodology at all to support his speculation at his deposition that Ms. Pierce's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. He acknowledged that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He also had no information to rebut ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And he acknowledged that he does not have "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* at 120:25-123:23.



In short, Dr. April's suggestion at his deposition that Ms. Pierce's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is pure quackery. It consists solely of "unsupported suppositions" and lacks

any "reliable way to draw a conclusion regarding the particular matter to which the expert testimony is directly relevant." *Fantasia Distrib.*, 693 F. Supp. 3d at 345 (cleaned up). It is a classic example of improper, unreliable "expert" opinion testimony. The Court must exclude it both because Dr. April failed to disclose it in his report and because it fails to meet Rule 702's reliability requirements.

**B.      The Court Should Exclude Dr. April's Baseless Assessment of ██████ ████████████████████████ Which Are Outside His Expertise**

Dr. April is a neurologist with no training or experience in forensic psychology. He did not conduct any psychological evaluation of Ms. Pierce, much less a forensic psychological examination designed to determine ████████████████████████.[2] His opinion that Ms. Pierce's "████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████," Ex. 2 at 9, fails all four requirements of Federal Rule Evidence 702 that are designed to ensure the reliability of expert testimony. The Court must exclude it.

**1.      Dr. April Is Not Qualified to Opine About ██████████ ████████████████████**

An expert must have the "scientific, technical, or other specialized knowledge" to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The purpose of Rule 702(a) is to ensure that "the proposed expert is, in fact, an expert . . . in the area in which he or she intends to testify." *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015). "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill

---

[2] *See* Jane Tyler Ward, PhD, *What Is Forensic Psychology?*, American Psychological Association, https://www.apa.org/ed/precollege/psn/2013/09/forensic-psychology (last visited Aug. 4, 2025) ("[T]he practice of forensic psychology, and perhaps the most frequent duty of forensic psychologists, is the psychological assessment of individuals who are involved, in one way or another, with the legal system.").

with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). "A witness's qualification on areas of knowledge by no means qualifies him to express opinions outside of his field." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 202 (S.D.N.Y. 2009).

For medical doctors, "[t]he mere possession of a medical degree does not qualify one to be an expert in all medically related fields." *Jacquez*, at 104 F. Supp. 3d at 429. Although a medical expert "need not be a specialist in the exact area of medicine implicated by the plaintiff's injury," he or she "must have relevant experience and qualifications such that whatever opinion [s]he will ultimately express would not be speculative." *Loyd v. United States*, No. 08 Civ. 9016, 2011 WL 1327043, at *5 (S.D.N.Y 2011) (quoting *In re Fosamax Prods. Liab. Litig.*, No. 06 Civ. 7631, 2009 WL 4042769, at *5-6 (S.D.N.Y. Nov. 23, 2009)). A physician cannot provide an expert opinion where the record lacks "any explanation, let alone proof, detailing how [the physician's] knowledge, skill, experience, training, or education relates in any way to [the medical issue at hand]." *Foley v. United States*, 294 F. Supp. 3d 83, 92 (W.D.N.Y. 2018)

Applying these standards, courts routinely exclude medical doctors' expert testimony concerning medical issues outside their areas of specialized knowledge, training, and experience. *See, e.g.*, *Jaquez*, 104 F. Supp. 3d at 429-31 (emergency medicine physician who had treated "'four or five' gunshot wounds" not qualified to opine about effects of gunshot wounds); *Loyd*, 2011 WL 1327043, at *5 (internist and infectious disease specialist not qualified to give testimony about causes of neurological disorders); *Foley*, 294 F. Supp. 3d at 91-92 (emergency medicine doctor not qualified to opine about colitis treatment); *In re Fosamax*, 2009 WL

6

4042769, at *5-7 (family medicine doctor not qualified to opine on whether medication caused jaw injury).

Dr. April, a neurologist, lacks the specialized knowledge, training, or experience related to the diagnosis and treatment of ███████████████████████████████████████ ██████████████████████████. Dr. April's resume, expert report, and deposition do not offer any evidence that he has any experience or specialized knowledge concerning ███████ ██████████████████████. *See generally* Exs. 1-3. When asked to confirm that he is "not a psychologist or psychiatrist," he responded that he is "a clinical neurologist with lots of experience in different fields." Ex. 1 at 208:5-11. But he failed to identify any relevant training or experience ████████████████████████████████. *See id.* Instead, Dr. April dismissed the distinction between the "different disciplines in medicine" entirely, testifying that they are "all arbitrary." *Id.* at 215:7-10.

Still, Dr. April acknowledged that he is "not certified" to conduct a "forensic psychological evaluation" concerning the causes of ████████████████████████. *Id.* at 208:13-24. He also conceded that he has never been retained or qualified by any court as a forensic psychological expert. *Id.* at 208:25-209:10. His resume notes several publications in the field of neurology that focus on, among other things, seizures, tremors, and cervical spine injury. *See* Ex. 3, Publications. Not one of his publications, however, appears to concern███████████ ██████████████████████. *See id.*

In short, Defendants have put forward zero evidence that Dr. April has the specialized knowledge, training, or experience needed to offer an opinion about the ███████████████ ██████████████████ The Court should preclude him from offering any opinion on that subject under Rule 702(a).

7

**███  Dr. April Fails to Apply Reliable Facts or Methods to His Opinion Concerning the Cause of █████████████**

Dr. April pairs his lack of qualifications to opine about the ████████████████ ████████████ with a complete failure to apply reliable facts or methods to come to his conclusions about them. As discussed above, under Federal Rule of Evidence 702(b)-(d), an expert may not rely on "unsupported suppositions" and must show that his or her methods establish a "reliable way to draw a conclusion regarding the particular matter to which the expert testimony is directly relevant." *Fantasia Distrib.*, 693 F. Supp. 3d at 345 (cleaned up). Dr. April used no methodology at all and relies on bare-bones facts to speculate that ████████████ ███████████████████████████████████████████████████████████████████████ █████████████████. Ex. 2 at 9.

At his deposition, Dr. April conceded he did not conduct any psychological evaluation of Ms. Pierce to determine ██████████████████████████ and that he is "not offering a forensic psychological opinion in this case." Ex. 1 at 214:14-17. Indeed, none of the tests Dr. April performed, all of which are described in his report, are designed to assess ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████:





Dr. April's failure to conduct any psychological test or evaluation is exacerbated by his

failure to consider sufficient facts or data to render an opinion ███████████████

███████████. He speculates that ███████████████████

███████████████████████," yet at the same time

acknowledges that Ms. Pierce "did not provide further information about this incident." Ex. 2 at

9; *see* Ex. 1 at 215:21-216:12. His report otherwise notes no information he gathered from Ms.

Pierce about her ████████████. His lack of appropriate qualifications and failure to apply

reliable facts or methods to opine about ████████████████████

require the Court to preclude him from doing so.

## II.  THE COURT SHOULD EXCLUDE DR. JOSEFINA TRANFA-ABBOUD'S NON-EXPERT TESTIMONY AND TESTIMONY OUTSIDE HER EXPERTISE

Throughout her report, Defendants' economics expert Dr. Josefina Tranfa-Abboud

reaches conclusions by simply citing the existence of facts in the record without applying any

economic analysis or reasoning:

- Paragraphs 1-4 of her report opine about whether the effects of the police assault prevent Ms. Pierce from working in the marketing profession for the rest of her life, a matter plainly outside her expertise as an economist.

- Paragraphs 5-10 list a series of facts about Ms. Pierce's employment history with no economic analysis whatsoever to speculate about whether Ms. Pierce would have continued to work for her former employer if not for the police assault.

- Paragraphs 11-13 opine about the reasons Ms. Pierce moved to France, a topic on which expert testimony from an economist is entirely inappropriate.

These opinions are inadmissible under Federal Rule of Evidence 702 because they apply no expertise or reliable methods to opine on matters within the understanding of the ordinary juror. The Court should preclude Dr. Tranfa-Abboud from providing these opinions at trial.

### A.    Rebuttal Experts Are Subject to the Same Admissibility Standards as All Experts

"[R]ebuttal experts must meet *Daubert's* threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (collecting cases). Like all experts, a rebuttal expert's "[t]estimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *Id.* at 43 (quoting *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008)).

A rebuttal expert also may not "usurp the role of the trial court to act as gatekeepers to ensure the relevance and reliability of all expert testimony." *Capri Sun GmbH v. Am. Bev. Corp.*, 595 F. Supp. 3d 83, 138 (S.D.N.Y. 2022) (citation and quotation marks omitted). And "a party may not present an expert to the jury 'solely for the purpose of constructing a factual narrative based upon record evidence.'" *Scott*, 315 F.R.D. at 45 (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)).

### B.    Background on Plaintiff's and Defendants' Economic Experts

On June 3, 2020, the date police assaulted Ms. Pierce, she was an Outreach and Marketing Director at New Music USA, a position she obtained after building a 15-year career in arts and music marketing. At her deposition, Ms. Pierce testified that the police assault forced her to leave that career and begin a new career in lutherie—building musical instruments like violins—because ██████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Ex. 6 (Pierce Dep.) at 134:17-135:25, 137:7-19, 229:19-230:9. Ms. Pierce's neurological expert Dr. Siddartha Nadkarni and ophthalmological expert Dr. Richard Storm will testify ██████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████.

Ms. Pierce produced an expert report from economist Kristin K. Kucsma calculating her lost lifetime earnings as a result of ███████████████████ that forced her to leave the marketing profession. Defendants then produced a rebuttal report from economist Dr. Josefina Tranfa-Abboud challenging certain parts of Ms. Kucsma's analysis.

### 1.    Plaintiff's Economist Kristin K. Kucsma

Ms. Pierce's economics expert Ms. Kucsma wrote a traditional expert report: she made factual assumptions, then used a traditional and accepted methodology to calculate economic damages based on those assumptions. In particular, Ms. Kucsma calculates Ms. Pierce's lost earnings in two scenarios: (1) Ms. Pierce cannot work at all for the rest of her life██████████ ████████, and (2) Ms. Pierce has a full career in lutherie for the rest of her working life. *See* Ex. 4 (Kucsma Report) at 3, 8-20. Ms. Kucsma calculates Ms. Pierce's lost earnings in each scenario by first estimating Ms. Pierce's expected lifetime earnings if she had been able to keep working in marketing. Ms. Kucsma then compares that amount with the absence of any income (scenario 1) and her estimated lifetime earnings as a luthier (scenario 2). *See id.* To estimate Ms. Pierce's lifetime earnings in marketing and lutherie, Ms. Kucsma applies data including Ms. Pierce's salary at New Music USA at the time of her injury, her expected remaining work life, prevailing wages in both fields, and expected annual wage growth in the economy. *See id.* Ms. Kucsma concludes that Ms. Pierce's lifetime lost earnings fall in a range of approximately $1.7 million (scenario 1) and $900,000 (scenario 2). *Id.* at 3.

11

Both of the scenarios described above make a factual assumption that Ms. Pierce's ███ ███ prevent her from working in marketing for the rest of her life. *See id.* at 79, ¶¶ 12 & 17. To make that assumption, Ms. Kucsma relies on both Ms. Pierce's testimony and Dr. Nadkarni's medical assessment. *See id.* As an economist, Ms. Kucsma offers no opinion herself about the cause of Ms. Pierce's injuries or whether Ms. Pierce had the functional capacity to continue to work in marketing. Ms. Pierce's inability to continue her prior marketing work is simply an assumption Ms. Kucsma makes in order to conduct her lost earnings calculation. At trial, Ms. Pierce will prove that she was unable to continue to work in marketing through her own testimony, Dr. Nadkarni's testimony, and Dr. Storm's testimony—not Ms. Kuscma's.

### 2.    Defendants' Economist Dr. Josefina Tranfa-Abboud

Defendants produced a rebuttal to Ms. Kucsma's report from economist Dr. Josefina Tranfa-Abboud. Dr. Tranfa-Abboud opines that "Ms. Kucsma's report is speculative, misleading, and contains conceptual errors, and is, therefore, unreliable, and invalid." Ex. 5 (Tranfa-Abboud Report) at 7. *She does not offer any independent calculation of Ms. Pierce's lost earnings*.

Dr. Tranfa-Abboud divides her report into 18 numbered paragraphs, each providing a separate reason why she claims Ms. Kucsma's analysis is "speculative," "misleading," "erroneous," and/or "invalid." *Id.* at 7-20. Paragraphs 14-18 of Dr. Tranfa-Abboud's report challenge the economic data Ms. Kucsma relied on to calculate Ms. Pierce's anticipated retirement age, remaining work life, annual wage growth, and lost health insurance. *Id.* at 16-19. Although Ms. Pierce intends to challenge these opinions by cross-examining Dr. Tranfa-Abboud, she does not dispute that they appropriately draw on Dr. Tranfa-Abboud's economic expertise and meet Federal Rule of Evidence 702's admissibility threshold.

12

Unlike Paragraphs 14-18 of Dr. Tranfa-Abboud's report, however, Paragraphs 1-13 do not apply *any* form of economic analysis or expertise to opine on the validity of Ms. Kucsma's lost earnings calculations. Instead, the opinions in these paragraphs focus on topics such as Ms. Pierce's ability to work in marketing after her injury and what motivated Ms. Pierce to move to France. *See generally id.* at 7-16.

### C.    Paragraphs 1-13 of Dr. Tranfa-Abboud's Report Are Not Proper Expert Testimony

Paragraphs 1-13 of Dr. Tranfa-Abboud's report recite record evidence and state conclusions about that evidence without applying any economic analysis or explaining how her experience in economics informs her conclusions. The Court should preclude Dr. Tranfa-Abboud from providing this non-expert testimony at trial.

### 1.    Paragraphs 1-4 of Dr. Tranfa-Abboud's Report Are Inadmissible

| Opinion in Paragraphs 1-4 | Facts Cited in Paragraphs 1-4 | Methods Applied |
| --- | --- | --- |
| Ms. Kucsma's "analysis is based on the speculative assumption that, as a result of the incident, Ms. Pierce has experienced a loss of earnings," and Ms. Kucsma "fails to indicate the reasons that led to Ms. Pierce's termination from New Music USA." Ex. 5 at 7-9. | (1) Ms. Pierce worked at New Music USA for eight months after the police assault; and (2) Ms. Pierce prepared "coherently written notes" and "positive self-reviews" after the police assault; (3) Ms. Pierce was placed on a Performance Improvement Plan (PIP) before her termination. *Id.* | None |

Paragraphs 1-4 of Dr. Tranfa-Abboud's report question the factual evidence about whether the police assault prevented Ms. Pierce continuing to work at New Music USA, or in the marketing field more generally. *See* Ex. 5 at 7-9.

Dr. Tranfa-Abboud's deposition testimony confirms that she applied no form of economic analysis to render this opinion. At her deposition, Dr. Tranfa-Abboud described the basis for her opinion in Paragraphs 1-4 by simply restating the facts she claims Ms. Kucsma failed to consider: "Ms. Kucsma . . . ignores the fact that Ms. Pierce continued to work for

several months, . . . wrote various discussions about her performance and accomplishments, [and] there was a performance improvement plan." Ex. 7 (Tranfa-Abboud Dep.) at 62:4-13. Dr. Tranfa-Abboud conceded that her interpretation of these facts relies on no economics literature, studies, journals, or mathematical models. *Id.* at 65:2-66:25. Rather, Dr. Tranfa-Abboud intends to play juror and offer her *own* views about how Ms. Pierce was functioning at her job and why her employment ended.

In the absence of any economic models or studies, Dr. Tranfa-Abboud's opinions must rely on her experience or specialized knowledge in the field of economics to be admissible expert testimony. *See Scott*, 315 F.R.D. at 43 (when "expert's testimony does not rest on traditional scientific methods," it must be rooted in expert's "practical experience"). Where, as here, a witness is "relying solely or primarily on experience, then [she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 328-29 (S.D.N.Y. 2022) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010)).

Dr. Tranfa-Abboud does not and cannot make the necessary link between her specialized knowledge or experience as an economist and the opinions in Paragraphs 1-4 of her report. For instance, when asked about the "significance" of Ms. Pierce's "coherently" written notes, Dr. Tranfa-Abboud simply stated that the notes are "readable" and "written in very good English." Ex. 7 (Tranfa-Abboud Dep.) at 80:8-25. The ordinary juror is just as capable of reading Ms. Pierce's notes as Dr. Tranfa-Abboud; nothing about her experience as an economist informs her opinion that Ms. Pierce writes in good English. An expert neurologist might be able to opine on

14

whether the ability to write well is incompatible with Dr. Nadkarni's █████████ █████ but Dr. Tranfa-Abboud conceded that she lacks the qualifications to opine on that subject. *Id.* at 45:3-7.

Similarly, Dr. Tranfa-Abboud makes no connection between her experience as an economist and the significance of Ms. Pierce's continued employment at New Music USA after the assault, including the performance improvement plan that culminated in Ms. Pierce's termination.[4] Again, Dr. Tranfa-Abboud's report and deposition testimony merely recite the existence of these facts without any explanation or analysis rooted in her expertise as an economist. *See id.* 62:4-14; Ex. 5 at 7-9.

Paragraphs 1-4 of Dr. Tranfa-Abboud's report do nothing more than state the existence of facts in the record, without "explain[ing] how [her] experience [as an economist] leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lickteig*, 589 F. Supp. 3d at 328-29 (citation and quotation marks omitted). That is not expert testimony. The Court should preclude her from providing the opinions expressed in Paragraphs 1-4 of her report at trial.

---

[4] In reality, these facts are entirely consistent with Ms. Pierce's inability to return to her career in marketing after being fired from New Music USA. The performance issues identified in the Performance Improvement Plan overlap ██████████████████████████████████████████████████████████ *See* Ex. 7 at 93:10-101:7. And Ms. Pierce testified that although she remained at New Music USA for several months after the assault, she struggled with migraines from long hours in front of the computer and ultimately concluded she could not continue in that type of work. Ex. 6 at 229:21-230:9, 232:11-21. Regardless, for present purposes, what matters is that Dr. Tranfa-Abboud's recitation of these facts has no connection to her expertise as an economist and offers nothing that is beyond the understanding of the ordinary juror to interpret them. *See Mejia*, 545 F.3d at 194 (expert testimony must "concern[] matters that the average juror is not capable of understanding on his or her own").

15

### 2. Paragraphs 5-10 of Dr. Tranfa-Abboud's Report Are Inadmissible

| Opinion in Paragraphs 5-10 | Facts Cited in Paragraphs 5-10 | Methods Applied |
|---|---|---|
| Ms. Kucsman's report "is based on the speculative assumption that, in the absence of the incident, Ms. Pierce would have continued to work in her capacity of Outreach Director/Director of Communications . . . until the end of her remaining worklife expectancy." Ex. 5 at 9-14. | (1) Ms. Pierce was only at New Music for two months before the police assault, and was still in her "Introductory Period;" (2) Ms. Pierce had three different employers in the four years preceding New Music USA; (3) Ms. Pierce was unemployed for six weeks in 2017 and approximately four months in 2019-20; (4) Ms. Pierce's supervisor told her that her attendance at protests would indicate she is not dedicated to her job; and (5) Ms. Pierce was placed on a PIP before her termination. Ex. 5 at 9-14 | None |

Paragraphs 5-10 of Dr. Tranfa-Abboud's report challenge an assumption Ms. Kucsma does not make: that in the absence of the police assault, Ms. Pierce would have worked at New Music USA for the rest of her career. Ex. 5 at 9-14; Ex. 7 at 114:12-115:20. Ms. Kucsma does not make that assumption. Rather, Ms. Kucsma uses Ms. Pierce's $80,000 annual salary at New Music USA before the assault as the baseline to calculate what she would earn for the rest of her working life if she had the capacity to continue working in the marketing field. *See* Ex. 4 at 6, 8-9. Using Ms. Pierce's salary at New Music USA to estimate her future earnings in the marketing industry is not the same thing as assuming Ms. Pierce would have kept working for the same company for the rest of her career. Because Paragraphs 5-10 of Dr. Tranfa-Abboud's report attempt to rebut an assumption Ms. Kucsma does not make, the opinion expressed in those paragraphs is irrelevant and inadmissible. *See Daubert*, 509 U.S. at 597 (expert testimony must be "relevant to the task at hand").

More to the point, Paragraphs 5-10 of Dr. Tranfa-Abboud's report again suffer from the same defect as Paragraphs 1-4: they simply recite a series of facts Dr. Tranfa-Abboud claims Ms. Kucsma did not consider, offering her own gloss on Ms. Pierce's employment history. Again,

Dr. Tranfa-Abboud fails to apply any economic method to analyze these facts or explain how her experience as an economist informs their significance.

For example, Paragraphs 5-8 characterize Ms. Pierce's employment history as "erratic" because (i) she began working at New Music USA two months before the police assault, (ii) held three jobs in the marketing industry in the four years before the police assault, and (iii) was unemployed for two stints totaling "several months" in the four years preceding the assault. Ex. 5 at 9-12; *see* Ex. 7 at 119:19-120:25. At her deposition, Dr. Tranfa-Abboud conceded that this opinion is not based on any formal definition of the word "erratic" in economics literature. Ex. 7 at 119:23-120:3. And when asked about "objective criteria" she applied to reach this opinion, she responded that she relied on "objective *documents* . . . about [Ms. Pierce's] employment history," without identifying any *criteria* she applied. *Id.* at 121:3-12 (emphasis added). Thus, Dr. Tranfa-Abboud's opinion in these paragraphs exists "solely for the purpose of constructing a factual narrative based upon record evidence," which is not a proper basis for expert testimony. *Scott*, 315 F.R.D. at 45 (citation and quotation marks omitted). Marshaling evidence is for defense counsel at closing argument. Analyzing and evaluating the evidence is for the jury. This expert is out of her lane.

Similarly, Paragraph 9 does nothing more than point to Ms. Pierce's deposition testimony that her supervisor told her "that if the employer heard again that Ms. Pierce was taking part in protests[,] this would be indication that Ms. Pierce was not dedicated to her job." Ex. 5 at 12. This rehash of Ms. Pierce's deposition not only lacks any conceivable connection to Dr. Tranfa-Abboud's expertise as an economist; at her deposition, Dr. Tranfa-Abboud also admitted that she was "not able to answer" whether there was any evidence at all connecting Ms. Pierce's attendance at protests with her departure from the marketing field. Ex. 7 at 113:24-114:6. Her

opinion about whether Ms. Pierce's attendance at protests impacted her career is pure speculation. Finally, like Paragraph 4 of her report, Paragraph 10 simply cites Ms. Pierce's PIP at New Music without applying any economic analysis or reasoning to explain its significance. *See* Ex. 5 at 13-14.

In sum, Paragraphs 5-10 of Dr. Tranfa-Abboud's report are irrelevant and inadmissible both because they attack an assumption Ms. Kucsma does not make and because they fail to apply any reliable method of economic analysis or reasoning.

### 3. Paragraphs 11-13 of Dr. Tranfa-Abboud's Report Are Inadmissible

| Opinion | Methods Applied | Facts Cited |
|---|---|---|
| Ms. Kucsma "failed to recognize the possibility that Ms. Pierce may have intended to move to France irrespective of . . . the incident." Ex. 5 at 14-16 | None | (1) Ms. Pierce studied French during her employment at New Music; and (2) Ms. Pierce's now-ex-wife moved to France in September 2021. *Id.* |

Paragraphs 11-13 of Dr. Tranfa-Abboud's report opine about whether Ms. Pierce would have moved to France to study lutherie irrespective of the police assault, a topic on which Dr. Tranfa-Abboud has nothing to offer the jury at all. At her deposition, Dr. Tranfa-Abboud admitted that "why Ms. Pierce chose to move to France" is "a question for Ms. Pierce," not her. Ex. 7 at 162:16-18. Dr. Tranfa-Abboud is correct about that. Her expertise as an economist does not add anything to inform the jury about the reasons why Ms. Pierce moved to France. Yet again, her opinion in Paragraphs 11-13 seeks to use expert testimony as an improper vehicle to rehash the factual record. The Court should preclude her from offering any testimony on the reasons why Ms. Pierce moved to France.

## III.   THE COURT SHOULD EXCLUDE EVIDENCE ABOUT EVENTS WITH NO CONNECTION TO MS. PIERCE OR HER ARREST

The Court should preclude Defendants from offering testimony or evidence about events at the protest that have no connection to Ms. Pierce or her arrest, including:

1.  Testimony concerning the conduct of other protesters at times and locations where there is no evidence Ms. Pierce was present;

2.  Testimony that police officers gave dispersal orders to an unspecified "crowd," without any connection to the time or location of Ms. Pierce's arrest.

3.  All testimony from non-party NYPD Captain Tarik Sheppard, who testified that he does not know Ms. Pierce, has never interacted with her, and was not present at the location of arrest.

This evidence, which lacks any connection to Defendants' assault or arrest of Ms. Pierce, has no bearing on the issues in this trial: whether the Defendant officers used excessive force and whether they had probable cause to arrest Ms. Pierce. Introduction of this evidence would also create a high risk of prejudice and juror confusion by suggesting that other people's actions with no connection to Ms. Pierce's arrest are relevant to her claims, which they are not.

The Court must exclude this evidence under Federal Rules of Evidence 401 and 403.

### A.    The Court Should Exclude Testimony About the Conduct of Other Protesters at Locations Separate from Ms. Pierce's Arrest

Testimony that unidentified protesters yelled and threw things at police officers at times and locations with no apparent connection to Ms. Pierce's arrest is irrelevant to Ms. Pierce's claims. It also poses a substantial risk of prejudice and juror confusion. The Court should not permit Defendants to introduce it.

Ms. Pierce's claims turn on whether *her* conduct—not the conduct of others—justified the Defendant officers' use of force or arrest. On Ms. Pierce's excessive force and assault and battery claims, the reasonableness of Defendants' force turns on "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to

evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). All three factors focus on Ms. Pierce and her conduct, not the conduct of other protesters. Similarly, on Ms. Pierce's arrest-based claims, probable cause must be "particularized with respect to the person to be . . . seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Testimony about the conduct of other protesters at times and locations separate from Ms. Pierce's arrest is, therefore, irrelevant to the claims to be tried. Yet, in support of their (denied) summary judgment motion, Defendants cited testimony from Defendant NYPD Officers Joseph Ryder and Michael Said that unspecified protesters "were yelling and throwing things," with no connection to Ms. Pierce or the time or location of her arrest. Dkt. 76-1 ¶ 6. Officer Ryder's testimony referred to protesters' conduct at a protest on June 2, 2020, the day *before* Ms. Pierce's arrest. Dkt. 76-8 at 223:10-20. Officer Said's testimony describes unidentified protesters "yelling, screaming, [and] throwing things" at an unspecified time where there is no evidence that Ms. Pierce was present—at a protest that spanned many hours and many blocks, attended by thousands of people. Dkt. 76-10 at 58:22-59:18; Dkt. 76-1 ¶ 5. There is also no evidence Officer Said was even present at the scene of Ms. Pierce's arrest.

Officers Said's and Ryder's testimony about the conduct of other protesters at other places with no connection to Ms. Pierce is irrelevant and poses a significant risk of prejudice and juror confusion. Whether or not other protesters yelled or threw things at other times and locations has no bearing on the three *Tracy* factors that determine the reasonableness of Defendants' use of force on Ms. Pierce. Nor is it relevant to whether Defendants had probable cause to arrest Ms. Pierce for a curfew violation—an offense which has nothing to do with whether anyone "yelled" or "threw things" at all. Introduction of evidence about purported

misconduct of other protesters, however, has significant potential to prejudice the jury against Ms. Pierce based on actions she did not commit. It will also likely confuse the jury into believing that this conduct is relevant to Ms. Pierce's claims when it is not.

Accordingly, the Court should preclude Defendants from offering testimony about the conduct of other, unidentified protesters at times and locations with no connection to Ms. Pierce's arrest, including Officer Ryder's and Officer Said's testimony about protesters allegedly "throwing things" that has no connection to Ms. Pierce.

### B. The Court Should Exclude Testimony About Dispersal Orders Given at Times and Locations Where There Is No Evidence Ms. Pierce was Present

Police officers who did not arrest Ms. Pierce should not be permitted to testify that they gave or heard dispersal orders at times and locations where there is no evidence Ms. Pierce was present, because this testimony is irrelevant to whether Ms. Pierce's arresting officers had probable cause to arrest her.

On Ms. Pierce's arrest-based claims, to determine whether Defendants had probable cause to arrest, the jury will "look at the facts as the officers knew them in light of the specific elements of each crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). As noted above, probable cause must be "particularized with respect to the person to be . . . seized." *Maryland*, 540 U.S. at 371. To evaluate Defendants' anticipated qualified immunity defense, the jury will look to "the objective reasonableness of the officers' belief that probable cause existed to arrest the plaintiff." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995).

Defendants claim they had probable cause to arrest Ms. Pierce for a curfew violation under Executive Order 119, which required Defendants to give Ms. Pierce a dispersal order before arresting her. *See* Dkt. 75-5 ("[F]ailure to comply with this order shall result in orders to

disperse."). Thus, the jury must determine whether Ms. Pierce's arresting officers reasonably believed that she received a dispersal order before they arrested her.

Testimony from officers who did not arrest Ms. Pierce about dispersal orders given at times or locations where there is no evidence Ms. Pierce was present has no bearing on whether Ms. Pierce's arresting officers reasonably believed she received a dispersal order. Yet, on their denied summary judgment motion, Defendants cited testimony from non-party NYPD Captain Tarik Sheppard and Officer Said that they gave or heard dispersal orders being given to an unspecified "crowd." *See* Dkt. 76-1 ¶ 12. There is no evidence, however, that either Captain Sheppard or Officer Said was present at the scene of Ms. Pierce's arrest, or that Ms. Pierce was present when Captain Sheppard or Officer Said gave or heard dispersal orders. Dkt. 76-10 at 58:22-59:19; Dkt. 76-11 at 91:4-95:10. Indeed, Captain Sheppard testified that he does not know Ms. Pierce at all. Dkt. 76-11 at 96:15-17, 12:3-5, 97:24-98-11.[5]

In sum, testimony from officers who did not arrest Ms. Pierce about dispersal orders being given where there is no evidence Ms. Pierce was present has no bearing on whether Ms. Pierce's arresting officers reasonably believed she received a dispersal order before arresting her. The Court must exclude it.

**C.    The Court Should Preclude Non-Party NYPD Captain Tarik Sheppard from Testifying**

Non-Defendant NYPD Captain Tarik Sheppard has nothing relevant to offer the jury. He said so at his deposition:

Q. And you understand that in the Pierce case you are not a defendant, correct?

A. I don't know the Pierce case.

---

[5] For the reasons set forth in Section III.C, *infra*, the Court should preclude Captain Sheppard from testifying in this case entirely.

….

Q. And did there come a time when you encountered Brigid Pierce at Cadman Plaza?

A. I don't remember Brigid Pierce.

….

Q. And do you recall anything specifically about the arrest of Brigid Pierce at Cadman Plaza?

A. And I don't remember Brigid Pierce.

Dkt. 76-11 at 12:3-5, 96:15-17, 97:24-98:2.

Captain Sheppard does not remember Ms. Pierce, was not present at the scene of her arrest, and did not interact with her at all. In the Joint Pretrial Order, Defendants state in vague terms that he "will testify about, inter alia, the events of June 3, 2020." Dkt. 99 at 8. However, Captain Sheppard knows nothing about the "events" concerning Defendants' assault and arrest of Ms. Pierce. [6]

To the extent he has general knowledge about the protest that may be relevant background, such as the number of protesters in attendance or the hours it took place, the Officer Defendants who assaulted and arrested Ms. Pierce can offer that same testimony. Receiving such testimony from Captain Sheppard would be cumulative and a waste of time under Federal Rule of Evidence 403.

Accordingly, the Court should preclude Captain Sheppard from testifying at trial.

---

[6] Our firm was counsel in *Lopez v. Gamble et al.*, No. 21 Civ. 2492 (E.D.N.Y.). Because some of the deponents potentially had information relevant to both cases, we agreed with corporation counsel to conduct one deposition of each witness for both cases. Captain Sheppard was a Defendant in the *Lopez* case, in which he ordered Mr. Lopez's arrest. As noted above, however, he knows nothing about the Pierce case. The *Lopez* case has since settled.

**CONCLUSION**

For the reasons set forth above, the Court should grant Plaintiff's motions *in limine*.

Dated:  August 11, 2025
        New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

<u>          /s          </u>
Ilann M. Maazel
Max Selver

One Rockefeller Plaza, 8th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for Plaintiff*

24