

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Corporation Counsel* | **THE CITY OF NEW YORK**<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, N.Y. 10007 | **JONATHAN HUTCHINSON**<br>*Senior Counsel*<br>Tel: (212) 356-2410<br>jhutchin@law.nyc.gov |

December 8, 2025

**By ECF**
Honorable Pamela K. Chen
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>Brigid Pierce v. Joseph Ryder, et al.</u>
              21-CV-3482 (PKC) (JRC)

Your Honor:

      I am a Senior Counsel in the Office of Muriel Goode-Trufant, Corporation Counsel of the City of New York and one of the attorneys representing defendants City of New York, Joseph Ryder, Danielle Moses, and Michael Said (collectively "defendants") in the above-referenced matter. Defendants write to respectfully request that the Court impose sanctions pursuant to Rule 37(c)(1)(B) of the Federal Rules of Civil Procedure, for plaintiff's failure to disclose information or records concerning neurological treatment received subsequent to July 21, 2022.

      By way of relevant procedural background, on November 3, 2021, defendants demanded that plaintiff identify all "documents . . . concerning . . . any physical and emotional injuries" that plaintiff claims were caused by the incident. <u>See</u> Exhibit A at 3. Additionally, defendants demanded that plaintiff identify "any healthcare providers plaintiff saw or received treatment from" for those injuries. <u>Id</u>. Defendants also requested that plaintiff produce "all documents concerning injuries or damages that plaintiff claims were caused or exacerbated by the Incident" and "a completed medical release for plaintiff's healthcare records . . . for each person/entity who provided healthcare for any physical or emotional injuries that plaintiff claims arose from, or were caused or exacerbated by, the Incident." <u>Id.</u> at 5-6.

      In several disclosures thereafter, plaintiff produced information and HIPAA releases pertaining to a number of providers, including one page of records from one provider in France – Dr. Alice LaPlante, a General Practitioner – who treated plaintiff on March 2, 2022. At no point during discovery or pre-trial proceedings did plaintiff disclose that she received neurology

treatment from a neuropsychologist in France subsequent to her diagnosis of serious and permanent brain injuries by Dr. Siddhartha Nadkarni, M.D., in September of 2022.

On December 5, 2025, plaintiff testified in support of her claims and was cross-examined by the defense. See Exhibit B. During the cross examination, plaintiff claimed, for the first time, that she had received follow-up medical treatment from a neurologist in France, following her diagnosis from Dr. Nadkarni in 2022:

Q: . . . In any of those places that you just mentioned, did you receive any follow-up treatment for your injuries after your diagnosis from Dr. Nadkarni?

A: I sought neurological treatment, so I guess that would be considered follow-up.

Q: And when was that?

A: I'm going to say in the period between 2022 and the summer of 2024. It was within the period that I still lived in Mirecourt.

Q: And what treatment did you receive?

A: I saw a neuropsychologist and he gave me a medication that he thought was going to mitigate some of the symptoms and some of the kind of loss of mental functions that I was experiencing.

Q: And what was his name?

A: I want to say it's Sebastian-something.

Id. at 688-689. Plaintiff subsequently testified, in sum and substance, that she is on the waiting list for treatment from another doctor in Paris, but has to wait until February or March. Id. It is unclear what, if any, records may exist as a result of her seeking that consultation.

Rule 37(c)(1)(B) of the Federal Rules of Civil Procedure provides that, when a party fails to supplement its discovery responses as required by Rule 26(e), the court may inform the jury of the party's failure, especially when the remedy of preclusion is no longer available. Given that plaintiff's testimony has already been taken in the absence of the relevant medical records, the discovery materials in question can roughly be analogized to spoliated evidence, where preclusion is also an unrealistic remedy. Where the adverse party is prejudiced by the non-production of evidence – whether destroyed or not – an adverse inference jury instruction is permitted as a curative. See, e.g., Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., 328 F.R.D. 100, 119 (S.D.N.Y. 2018) ("Although adverse inference instructions typically are used in cases involving spoliation of evidence, a court also may grant an adverse inference instruction for the non-production of evidence") (citation omitted).

The failure to disclose that plaintiff was treated by a neurologist after her diagnosis with a traumatic brain injury by Dr. Nadkarni in 2022 represents a failure to timely disclose evidence that

plaintiff was obligated to disclose as a supplement to her responses to defendants' November 3, 2021 discovery demands. Given that the evidence in question consists of plaintiff's own medical records, plaintiff had control over those records. Id. In addition, without plaintiff's testimony, defendants had no knowledge that any such records existed.

Defendants have satisfied their initial burden of demonstrating plaintiff's non-compliance with her discovery obligations, with regard to the missing neurology records, by showing "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the . . . claim or defense." Scantibodies Lab., Inc. v. Church & Dwight Co., No. 14 Civ. 2275, 2016 U.S. Dist. LEXIS 154396, at *35 (S.D.N.Y. Nov. 4, 2016). The evidence in question consists of plaintiff's own medical records, which can only be obtained with her consent or via subpoena, and the information regarding the identity of the neurologist was exclusively in plaintiff's possession. The circumstances also show that plaintiff had the "culpable state of mind" required in her failure to timely produce the records from her neurology treatment in France: at the very least, plaintiff was negligent in failing to identify the provider, provide a HIPAA release for the provider, or mention at any point that there was an issue obtaining records from the provider. See Residential Funding Corp. v DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d. Cir. 2002) (gross negligence is sufficient to infer a culpable state of mind on the part of the party responsible for the non-disclosure).

Defendants raised concerns regarding plaintiff's dilatory production of medical records at pre-trial conferences on October 19, 2025, November 19, 2025, and November 25, 2025 at no point did plaintiff indicate that additional records were outstanding. The Court may infer from plaintiff's silence that her failure to disclose the records in question was intentional, not merely negligent. The plaintiff was plainly on notice of her obligation to produce all relevant medical records and neglected to do so. See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., LLC, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010); see also Sekisui Am. Corp. v. Hart, 945 F. Supp. 2d 494, 508 (S.D.N.Y. 2013) ("When evidence is destroyed intentionally, such destruction is sufficient evidence from which to conclude that the missing evidence was unfavorable to that party."). Finally, the records are relevant to plaintiff's claim that she sustained serious and permanent brain injuries, otherwise supported by a single diagnosis from an expert retained for the purpose of litigation.

Plaintiff's failure to supplement her discovery responses resulted in concrete prejudice to defendants by depriving them of the ability to fairly defend against allegations that plaintiff sustained a permanent traumatic brain injury as a result of their actions. With regard to neurology records specifically, these records are crucial to the jury's ability to fairly evaluate plaintiff's claimed serious, permanent brain injuries. In responding to counsel's question regarding follow-up treatment with an affirmative answer about treatment that was never disclosed, plaintiff gained an unfair advantage and proffered evidence that cannot be rebutted, due to her discovery violation. Assuming the records exist, in light of the dearth of any treatment records for the claimed brain injury, one can only assume they also would have been favorable to the defense. Further, defendants were deprived of the ability to obtain and review those records, which may have contradicted the testimony of plaintiff or any of her experts.

Since preclusion of the testimony is no longer an option, an adverse inference jury instruction is the only remedy available to the Court sufficient to cure the unfair prejudice endured by defendants. The sanction should be designed to restore "the prejudiced party to the same position he would have been in absent the wrongful" deprivation of evidence by the opposing party. <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999).

Defendants respectfully submit that the jury should be instructed as follows: the plaintiff testified that she saw a neuropsychologist and received treatment between 2022 and 2024 following Dr. Nadkarni's report. Because the records of any such treatment were in the plaintiff's control and she failed to produce them in connection with this lawsuit, you should assume that they would have been favorable to the defense.

Accordingly, for the reasons stated herein, defendants respectfully request that the Court issue defendants' proposed adverse inference jury instruction to cure the prejudice caused by plaintiff's failure to disclose the crucial medical records in question.

Defendants thank the Court for its consideration herein.

    Respectfully submitted,

    /s/ Jonathan Hutchinson
    Jonathan Hutchinson
    *Senior Counsel*
    Special Federal Litigation Division

cc:    All Counsel of Record (via ECF)